UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
LESLIE BLAKE,                                               :
               Plaintiff,                                       :
                                                            :   **MEMORANDUM DECISION AND**
               - against -                                     :   **ORDER**
                                                            :
COMMISSIONER OF SOCIAL SECURITY,                            :   15 Civ. 0001 (BMC)
                                                            :
               Defendant.                                       :
                                                            :
----------------------------------------------------------- X

**COGAN,** District Judge.

       Plaintiff Leslie Blake brings this action pursuant to 42 U.S.C. § 405(g) to appeal the final decision made by the Commissioner of Social Security (the "Commissioner"), which found that plaintiff is not disabled, and, therefore, not entitled to disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and the Commissioner has cross-moved for judgment on the pleadings. As detailed below, plaintiff's motion is granted, and the Commissioner's cross-motion is denied. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

       Plaintiff applied for disability insurance benefits on January 3, 2012, alleging disability since January 10, 2011 due to spinal disease and injuries to both knees and his right shoulder. A hearing was held before an Administrative Law Judge (the "ALJ"), at which plaintiff appeared with counsel and testified. The ALJ denied plaintiff's claim, finding that plaintiff could perform a range of light work and therefore was not disabled, and had not been disabled for any period

since January 10, 2011. The Appeals Council denied plaintiff's request for review, and this appeal followed.

## II.  Non-Medical Facts

Plaintiff was 54 years old at the time of the hearing before the ALJ. He had a high school education and spoke fluent English. Plaintiff worked as a construction electrician for over thirty years, until the time of his work-related shoulder injury in January 2011, and had not had significant employment since that injury. Plaintiff testified that he suffered from pain in his right shoulder, both knees, and his back.

Plaintiff underwent surgery on his right shoulder in August 2011, after which he continued to experience limitations, in particular difficulty reaching, pushing, pulling, or lifting. In February 2012, plaintiff was told by an orthopedic surgeon that he may need further revision surgery, but plaintiff did not want to undergo a second surgery after the first one had been unsuccessful.

Plaintiff testified that he still had limited mobility in his right shoulder and that he could not reach, pull, or lift anything heavy with his right shoulder or lift his arm above shoulder level, and only feels comfortable lifting eight to ten pounds. Plaintiff rated his right shoulder pain as five to eight out of ten.

In addition to shoulder pain, plaintiff testified that he suffered from back pain and knee pain. His back pain prevented him from lifting heavy weight; plaintiff testified he felt significant pain, though it was unclear whether he felt pain all the time or only when lifting heavy objects. Plaintiff had an epidural one time for his pain, but testified he did not go back because the shot was administered without sedation and he could not undergo the pain of the procedure.

Prior to his work injury, plaintiff also suffered from knee pain, and underwent surgery on his knees in 2009. Plaintiff stated that his knee pain had prevented him from standing or walking for longer than thirty minutes without a break. Plaintiff's knee pain appeared to be rooted in the loss of cartilage in his knees after surgery.

Plaintiff took hydrocodone twice daily to treat all of his pain, but testified it did not relieve his pain entirely. He lived at home with his wife and two children. Although plaintiff did not require special help, he had limitations with most physical activities. His wife cared for the children and prepared plaintiff's meals.

### III.   Medical Evidence of Knee and Back Pain

Plaintiff conceded that he had not sought treatment for his knee pain since 2011. Plaintiff, however, reported that he had knee surgeries on both knees and physical exams revealed healed arthroscopic portal scars on plaintiff's knees. As to plaintiff's back, plaintiff reported to an orthopedic consultant that he had a back injury at work in 2001, and that he was treated for this condition with prescription medications and physical therapy in the past. Plaintiff also reported that he underwent a lumbar spine MRI, but no MRI report appeared in the record.

#### A. Treating Physicians

Dr. Mark Decker and Dr. Lowell Barek reviewed an MRI done of both knees in March 2009. They diagnosed the right knee with a congenital condition whereby the kneecap is made from two bones instead of one, with a lateral dislocation and high-riding patella, with full thickness cartilage loss over the lateral patellar facet. The left knee was diagnosed with a high-riding patella with lateral dislocation, significant cartilage loss in the lateral patella and apex, and distal patellar tendonitis. Dr. Decker and Dr. Barek did not find a meniscal tear on either knee.

It is unclear whether the knee surgeries reported by plaintiff took place after the MRI or whether more recent MRIs were done.

Plaintiff saw Dr. Mathew Lefkowitz on September 17, 2012 with a chief complaint of low back pain. The doctor noted a twelve year history of progressively worsening low back pain, and the failure of a conservative treatment which included prescription pain relievers and physical therapy. Plaintiff had previously consulted with a chiropractor, acupuncturist, and physical therapist. Dr. Lefkowitz diagnosed a lumbar sprain, lumbosacral spondylosis without myelopathy, and lumbago, and recommended joint injections. Plaintiff returned on September 20, 2012 for lidocaine injections but declined to receive steroid injections. Plaintiff reported 80% relief ten minutes after the injections. Dr. Lefkowitz prescribed physical therapy and recommended that plaintiff return in two weeks for a follow up appointment.

Plaintiff returned on October 15, 2012 reporting pain when sitting and reclining. Plaintiff reported 60% relief lasting several days post-injection. Dr. Lefkowitz instructed plaintiff to continue physical therapy and prescribed a topical medication.

### B. Consulting Physicians

The Division of Disability Determination referred plaintiff to Dr. Vinod Thurkal for an internal medicine examination on March 14, 2012. In addition to the shoulder injury, plaintiff reported to Dr. Thurkal that he had a work-related injury involving meniscus tears to both knees in 2009. Plaintiff continued to experience knee pain after surgery, which plaintiff stated was precipitated by standing for a long time, walking, and going up and down stairs. During the examination, plaintiff refused to squat due to knee pain.

Plaintiff also reported lower back pain, but denied any injury. Plaintiff stated to Dr. Thurkal that the pain was sharp and continuous, a 10 out of 10, which was precipitated by

4

standing for a long time, bending, lifting, and going up and down the stairs. Plaintiff reported relief to his knees and back with rest and pain medication. Dr. Thurkal gave plaintiff a "fair" prognosis. He found that plaintiff had "no limitations for sitting, standing, or bending, but mild limitations for pulling, pushing, lifting, carrying, or any other such related activities due to multiple joint pains as depicted [in the report]."

Dr. Louis Tranese performed an orthopedic consultative examination in March 2013. Dr. Tranese examined plaintiff and found that plaintiff's right shoulder had a limited range of motion. Plaintiff had also complained of lower back pain, and frequent but episodic bilateral knee pain, with greater pain in the left knee than the right. Plaintiff reported that there was increased pain with stair climbing, walking long distances, standing extended periods, and squatting or kneeling. Plaintiff also noted that his back and knee pain are relieved moderately with prescription pain medication, position changes, and rest. In her report, Dr. Tranese stated that plaintiff had "moderate restrictions at this time with heavy lifting," "mild restrictions with frequent squatting and repetitive bending," and may have had "minimal restrictions with frequent stair climbing, walking extended distances, and standing for long periods."

Dr. Tranese's "Medical Source Statement Of Ability To Do Work-Related Activities (Physical)" found that plaintiff could walk for one hour at a time, for a total of five hours per eight-hour work day, and sit for three hours at a time, for a total of seven hours per eight-hour work day. In addition to the limitations for overhead reaching and pushing and pulling with the right shoulder, Dr. Tranese reported that plaintiff could only occasionally climb ladders or scaffolds, or crawl, and could frequently (accounting for 1/3 to 2/3 of the day) climb stairs and ramps, stoop, kneel, and crouch. Dr. Tranese noted that these limitations had lasted or would last for twelve consecutive months.

5

**DISCUSSION**

Plaintiff alleges that the ALJ's decision was not supported by substantial evidence and that the ALJ did not follow the correct relevant legal principles in concluding that plaintiff was not disabled. Principally, plaintiff argues that the ALJ failed to consider the limitations caused by plaintiff's back and knee problems in determining plaintiff's residual functional capacity ("RFC"), making the hypothetical given to the vocational expert (the "VE") deficient.[1] Plaintiff also argues that, because he was 55 years old at the time of the Appeals Council's decision on December 9, 2014, he was of "advanced age" under the Act, and the matter should have been remanded to the ALJ to reconsider that factor.

**I.    Standard of Review**

A district court may set aside the ALJ's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted). "Substantial evidence" is "more than a scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). An evaluation of the "substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g); see also Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In reviewing the ALJ's decision and the administrative record, a district court may not "substitute its own judgment for that of the

---

[1] Plaintiff also argues that the ALJ did not consider limitations to pushing and pulling with plaintiff's dominant right arm, and therefore did not incorporate it into the hypothetical. This allegation is incorrect, as the finding as to RFC stated that plaintiff was "precluded from using his right arm for pushing and pulling," and this limitation was included in the hypothetical for the VE.

6

ALJ, even if it might have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).

The claimant bears the general burden of proving disability. Burgess, 537 F.3d at 128. A claimant is disabled within the meaning of the Social Security Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). The Commissioner must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." Id. § 423(d)(2)(B).

The Social Security Administration ("SSA") has promulgated a five step analysis whereby the ALJ must make a finding of disability if she determines: "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in his prior type of work, . . . [and] (5) there is not another type of work the claimant can do." Burgess, 537 F.3d at 120; see also 20 C.F.R. § 404.1520(a)–(g). The claimant bears the burden of proof at steps one through four; at the step five, the burden shifts from the claimant to the Commissioner, requiring the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

When determining a claimant's RFC at step four, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question. See 20 C.F.R. § 416.929; Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record. Genier, 606 F.3d at 49. In doing so, the Act's regulations provide a two-step process. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant does suffer from such an impairment, the ALJ must consider at the second step "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of the record. 20 C.F.R. § 404.1529(a).

## II. Analysis

### a. Plaintiff's Knee and Back Pain

Plaintiff argues that the determination of plaintiff's RFC was not supported by substantial evidence, and the VE was therefore given an inadequate hypothetical from which to form an opinion about the ability of plaintiff to work. Specifically, plaintiff argues that the ALJ incorrectly failed to include limitations in the VE hypothetical relating to plaintiff's knee and back impairments.

The ALJ determined that plaintiff had not engaged in substantial gainful activity since January 10, 2011, the alleged onset date, and that plaintiff suffered from "severe impairments" relating to a right shoulder labral tear (status post-surgical intervention); lumbar sprain/lumbosacral spondylosis without myelopathy; lumbago; and bilateral knee impairment.

The ALJ stated that, "because of the residual effects from [plaintiff's] prior knee surgery and his back pain" the plaintiff was "limited to light work." The ALJ found that plaintiff had the RFC

> to perform light work . . . except that he can only use his right dominant arm occasionally to reach no higher than shoulder level and/or to reach in front of his body. He is precluded from using his right arm for pushing and pulling. He is limited to occasionally lifting and carrying no more than a docket file, ledger, or small tool with his right arm. He is able to handle, finger, feel, grasp, and turn with the right hand. He has no limitations using his left arm and hand. He is precluded from working at heights, climb[ing] ladders or scaffolds, and should avoid operating heavy machinery.

In reaching her decision as to plaintiff's RFC, the ALJ considered the findings of plaintiff's treating and consulting doctors and determined the credibility of plaintiff's own testimony. In particular, the ALJ gave significant weight to the examination results of Dr. Tranese and one statement by Dr. Thurkal relating to "light duty." The ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [plaintiff's back and knee pain] symptoms are not entirely credible." The ALJ stated that the medical evidence, while supporting a finding of some shoulder limitations, did not support any serious limitations caused by low back pain or knee impairments. The ALJ stated that this was supported by the consultative examinations and further supported by the fact that plaintiff had not sought treatment for any knee problems since 2011, and had not sought any treatment for shoulder pain since 2012.

In making her findings, the ALJ committed several legal errors. First, the ALJ must consider all of the plaintiff's limitations as a whole, even if plaintiff's knee and back pain alone would not support a finding of disability. See 42 U.S.C. § 423(d)(2)(B). Second, as a matter of law, "[j]ust because plaintiff's disability went untreated does not mean he was not disabled." Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000). In addition, plaintiff in fact testified that he

9

had been taking prescription pain medication orally to treat all of his pain. The ALJ erred in considering these symptoms in isolation and in placing significance on the fact that plaintiff had not sought further treatment for knee pain without properly considering other facts in the record.

As to whether the medical evidence and examinations supported the RFC, the ALJ's findings are not supported by substantial evidence in the record. The record included evidence of knee surgeries and an MRI that shows plaintiff had a significant loss of cartilage in one knee and full-thickness cartilage loss in the other. Plaintiff was diagnosed with back and knee pain and, to the extent that the objective evidence supported such an opinion, those opinions should not have been disregarded. The orthopedic consultative examiner for the State Agency, Dr. Tranese – whom the ALJ noted provided "a very detailed opinion" and to whose opinion the ALJ afforded significant weight – noted that the plaintiff could not walk for more than one hour at a time, or stand for more than three hours at a time. The ALJ's opinion stated only the total hours that the claimant could walk or stand in a workday, without any regard to the records implying that claimant would need to rest rather than do those activities completely; therefore, it is unclear whether these limitations were considered in the ALJ's determination that plaintiff could perform light work.

Lastly, the ALJ mischaracterized one treating physician's opinion as supporting a finding for light work. The ALJ stated that Dr. Sekhon, who treated plaintiff for his shoulder injury, "did not rule out light duty" and later stated that plaintiff's "treating orthopedic physician found the claimant was limited to light work and this was given significant weight based on the continuity of the treating relationship." The latter statement is incorrect, and the former also appears to misunderstand Dr. Sekhon's diagnosis, which was that plaintiff was unable to return to his job because no light duty was available as a construction electrician. Even if Dr. Sekhon's

10

diagnosis was written with the SSA's definition of "light work" in mind – and there is no evidence that it was – such a conclusion is reserved for the ALJ after reviewing objective medical evidence and opinions as to plaintiff's medical abilities and limitations. In sum, the ALJ "erred because the determination did not comply with the ALJ's obligation to consider all of the relevant medical and other evidence." See Padula v. Astrue, 514 F. App'x 49, 51 (2d Cir. 2013) (internal citation omitted).

Had the ALJ properly considered the limitations to plaintiff's knees and back, she may have determined plaintiff's RFC differently. The Act notes that, "[e]ven though the weight lifted may be very little, a job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Further walking or standing limitations may have necessitated a finding of light work with further limitations, or a finding of sedentary work – either of which could have resulted in a finding of disability. Notably, of the hypotheticals submitted to the VE, only one resulted in an individual able to perform unskilled work with jobs available in the national economy, and the ALJ ultimately determined that hypothetical to be plaintiff's RFC.

Finally, the ALJ determined that plaintiff was not entitled to a closed period of disability benefits, stating merely that plaintiff's "motion was considered but is found to be without merit." To the extent that this finding was based on the same errors as noted above, it is not supported by substantial evidence in the record.

### b. **Plaintiff's Age**

Plaintiff also argues that, because the Appeals Council issued its decision on December 9, 2014, plaintiff was 55 years old, making him a person of "advanced age." Plaintiff argues that

factoring in his advanced age on the date of the Appeals Council decision would have resulted in a finding that plaintiff was disabled. Plaintiff argues that ignoring plaintiff's age was improper, and that the Appeals Council could have decided plaintiff was disabled or, at the very least, could have remanded the matter to the ALJ for consideration of the effect of plaintiff's age.

The SSA has issued regulations regarding the consideration of a claimant's age as a vocational factor. The SSA

> will not apply the age categories mechanically in a borderline situation. If [a claimant] [is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant] [is] disabled, [the SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.

20 C.F.R. §§ 404.1563(b), 416.963(b). Other Circuits have held that the appropriate date for analyzing a borderline situation is the last day of the plaintiff's insured status before the adjudication date. See, e.g., Byers v. Astrue, 506 F. App'x 788, 791 (10th Cir. 2012); Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068 (9th Cir. 2010). Plaintiff was born on May 7, 1959, and the ALJ issued her decision on October 18, 2013, making plaintiff approximately 54 years and 5 months old.

How close a claimant must be in age to qualify for the higher age range varies and includes a consideration of various factors, including previous work experience. Compare Van Der Maas v. Comm'r of Soc. Sec., 198 F. App'x 521 (6th Cir. 2006) (55 days shy of birthday not considered borderline in light of other factors) with Phillips v. Astrue, 671 F.3d 699 (8th Cir. 2012) (four months shy of birthday considered borderline). In the instant case, the ALJ found that plaintiff could perform a reduced range of light work, and that the claimant was fluent in English and had a high school education. Further, although the ALJ's decision noted the plaintiff's age at the onset of the shoulder injury, the ALJ's hypothetical for the VE included the

12

plaintiff's birthday, such that the VE could correctly consider plaintiff's current age as a vocational factor. Thus, the ALJ properly did not mechanically rely on the guidelines but instead relied on the VE as to whether jobs existed in the national economy for an individual with plaintiff's age, education, work experience. Therefore, placing plaintiff in the "approaching advanced age" category was not error.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is GRANTED and the Commissioner's cross-motion for judgment on the pleadings is DENIED. The case is remanded. The ALJ shall properly construe and consider the medical opinions regarding plaintiff's knee and back pain and determine plaintiff's RFC accordingly.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
November 16, 2015